ROBERT L. BETTS, *Plaintiff in Error*, v. D. L. THRASHER, *Defendant in Error.*

138 So. 500.

Division A.

Opinion filed December 21, 1931.

Petition for rehearing denied January 23, 1932.

*Newell & Boyer*, for Plaintiff in Error;

*George G. Herring*, for Defendant in Error.

BUFORD, C.J.—In this case Thrasher sued Betts, filing his declaration in five (5) counts. The first four counts

were common counts. The fifth count was based upon the right of the plaintiff to recover upon the theory that he had paid the defendant $5000.00 as the initial payment on the purchase price of certain real estate and that it developed that the defendant was not vested with merchantable title to the real estate and could not deliver merchantable title to the real estate and that, thereupon, the plaintiff was entitled to the return to him by the defendant of the original $5000.00 paid by the plaintiff to the defendant.

The record shows that on the 7th of October, 1925, a contract was entered into between the plaintiff in the court below and the defendant in the court below wherein and whereby Betts, joined by his wife, agreed to convey to Thrasher certain lands and received Five Thousand $5,-000.00) Dollars as a cash payment. Thirteen Thousand ($13,000.00) Dollars additional was to be paid on delivery of warranty deed and Fifty-four Thousand ($54,000.00) Dollars additional thereto was to be paid in four equal annual installments, one, two, three and four years from date of the deed. The contract contained the following provision:

Within a reasonable time and as soon as same can be obtained, parties of the first part agree that they will deliver to party of the second part a full and complete abstract of title to said premises, and the party of the second part shall have thirty days (30) after the receipt of same in which to examine or cause same to be examined. If, upon said examination of title, it shall be found that the parties of the first part or either of them are vested with a good and merchantable title in and to said property, free and discharged of all liens, encumbrances, clouds or defects of whatsoever nature and description, save and except taxes for the current year and any obligation which shall be taken up at the time of the consummation of said deal; then the party of the second part agrees to make a further cash payment of Thirteen Thousand ($13,000.00) dollars, on or before the expiration of said thirty days, and the parties of the first part, contemporaneously with the receipt of

said money, agree to make, execute and deliver a good and sufficient Warranty Deed to said premises, conveying a good and merchantable title, subject only to the taxes for the year 1925;

If, upon examination of said title, it should be found that the parties of the first part are not vested with a merchantable title to said property, then and in that event the parties of the first part agree that they will, within a reasonable time and at their own expense, perfect said title.

Upon receipt of said deed, party of the second part agrees to make, execute and deliver to the parties of the first part a mortgage which shall constitute a first mortgage lien upon said premises, securing the balance of said purchase price, to-wit; Fifty Four Thousand ($54,000.00) dollars, and securing four notes to be executed and delivered therewith, each in the principal sum of Thirteen Thousand Five Hundred ($13,500.00) Dollars, one due and payable on or before one year after date, another due and payable on or before two years after date, and the third due and payable on or before three years after date and one payable four years after date thereof, bearing interest at the rate of eight (8) percent per annum, payable semi-annually.''

The record shows that on the 20th of October, 1925, abstract had been furnished counsel for the purchaser. He had examined the abstract and on that date purchaser's attorney rendered an opinion pointing out certain objections to the title and advising that title would have to be perfected by a suit to quiet title. Suit to quiet title was filed on November 27th, 1925. Final decree was entered on April 9th, 1926. The decree entered at that time by inadvertence, it appears, described lands in section 5 instead of in section 6. This mistake being brought to the attention of the vendors, they immediately offered to have the error corrected and endeavored to ascertain from the attorney of the purchaser whether or not he had any other objections to the title and it appears that no specific objections were raised. Then it appears that attorney for the purchaser advised the attorney for the vendor that he

would insist upon the return of the money because the title had not been sooner perfected. It appears that the decree of April 9th was corrected by order of the Court of June 8th.

The declaration in this case was filed on the 31st day of May. The defendant was given formal notice of demand for the return of $5,000.00 paid under the contract on the 23rd of April, 1926.

The only question necessary for us to determine in this case is whether or not the vendor had exercised due diligence in furnishing an abstract of the property to the purchaser as contemplated by the contract and whether or not after the furnishing of that abstract and being advised of the opinion of the purchaser's attorney that the title was unsatisfactory, he used due diligence in proceeding to perfect the title.

The vendor under the terms of the contract had a reasonable time in which to furnish an abstract. He furnished it promptly. Objections to the title were brought to the attention of the vendor at an early date, that is about the 20th of October, 1925. The vendor then promptly filed suit to remove cloud from title and to perfect the title. The suit was pushed with reasonable diligence and a final decree obtained within a reasonable time and without unnecessary or unusual delay, the final decree being entered on April 9th, 1926. This was 5 months and 2 days after the filing of the suit. It is true that this decree contained what appears from the record before us to have been typographical error in the use of the figure 5 in lieu of the figure 6, but this error was one which could have been immediately corrected by the Court and it appears that application for such correction would have been immediately made but for the fact that the purchaser at that time did not want to take the lands and his attorney advised counsel for the vendor that he considered that a reasonable time had elapsed since the signing of the contract and would

demand the return of the part of the purchase money which had been paid.

This court has several times taken judicial cognizance of the fact that there was an abnormal real estate boom in Florida and that prices of real estate were at a peak in the fall of 1925; that by early in 1926 the boom began to fade away; prices began to slump and those who had bought property, or obligated to buy property, in October and November of 1925 and who had not disposed of the same prior to April or May of 1926 realized that they had made unwise purchases in most cases and stood to experience great losses if they carried out their obligations.

It appears to us that under the rules of law as enunciated by this Court in the case of Cox vs. Gross, 97 Fla. 848, 122 Sou. 513, there was no such delay upon the part of the vendor upon carrying out the terms of his contract which would warrant the vendee in rescinding the contract and demanding return of the purchase money paid.

There are other interesting questions raised by the assignments of error on the record, but as for the reasons stated the plaintiff is not entitled to recover at all, it is unnecessary to discuss those questions here.

The judgment should be reversed and it is so ordered.

Reversed.

ELLIS AND BROWN, J.J., concur.

WHITFIELD, P.J., AND TERRELL AND DAVIS, J.J., concur in the opinion and judgment.